IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE TAYLOR, ELRESE BOOKER and KATRINA STONE, | ) ) ) | |
| Plaintiffs, | ) ) | No. 18 CV 7403 |
| v. | ) ) | Judge Jorge L. Alonso |
| LEONARD M. KILMER, individually and as agent of WILSON LINES, INC., and WILSON LINES, INC. | ) ) ) ) ) | Magistrate Judge Jeffrey I. Cummings |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, plaintiffs' motion to quash defendants' subpoenas to Advanced Ambulatory Surgical Center, Inc., Sage Medical Management, LLC, Windy City Anesthesia, P.C., Lake Shore Surgery Center, Kalina Pain Institute, Rogers Park One Day Surgery Center, and Pain Treatment Centers of Illinois (Dkt. 114) is granted in part and denied in part. Plaintiff Andre Taylor's motion to quash defendants' subpoenas to Pro Clinics, EQMD, Inc., Elite Rehabilitation Institute, Chicago Bone & Joint Institute, Preferred Open MRI, and Provident Hospital of Cook County (Dkt. 122) is also granted in part and denied in part.

**I.      Background**

In this action, plaintiffs Andre Taylor, Elrese Booker, and Katrina Stone allege negligence on the part of defendant Leonard Kilmer, individually and as agent of co-defendant Wilson Lines, Inc., arising out of a motor vehicle accident on November 7, 2017. Plaintiffs seek compensatory damages for the medical treatment incurred as a result of the accident. Fact discovery is ongoing and set to close on March 31, 2020.

Throughout discovery, plaintiffs produced bills and medical records from over a dozen medical providers. Defendants also issued subpoenas to the providers for medical records and took the depositions of billing administrators for three of the providers. Recently, defendants issued supplemental subpoenas for documents to the following medical providers: (1) Advanced Ambulatory Surgical Center, Inc.; (2) Sage Medical Management, LLC; (3) Windy City Anesthesia, P.C.; (4) Lake Shore Surgery Center; (5) Kalina Pain Institute; (6) Rogers Park One Day Surgery Center; and (7) Pain Treatment Centers of Illinois. In those subpoenas, defendants seek thirteen categories of documents (related to plaintiffs and *all* patients) including, among other things, agreements between Dr. Kalina and any treating facility; data as to how many pain injections each facility provided to litigating patients and non-litigating patients; a list of all facilities used to provide injections; all claims associated with each facility; rates of reimbursement and percentages of reimbursement for litigation related matters; a report of amounts recovered for patients involved in litigation, amounts outstanding, and claims with no recovery; and a fee schedule and any data relied upon by each facility to determine the amount billed for the services provided to plaintiffs. (*See* "Rider A" - Dkt 114 at Exs. A-G.) For a number of the requests, defendants also ask the medical providers to "generate" a report for the data requested. (*See* Nos. 4-6, 8-9, & 11-12 in Rider A.) Defendants seek documents from November 1, 2017 through the present.

More recently, defendants issued subpoenas to Pro Clinics, EQMD, Inc., Elite Rehabilitation Institute, Chicago Bone & Joint Institute, Preferred Open MRI, and Provident Hospital of Cook County. (Dkt. 122 at Exs. A-F.) Apart from EQMD, Inc., none of these medical providers treated plaintiff Andre Taylor for alleged injuries he sustained in the November 7, 2017 accident. Instead, these other providers treated Taylor for injuries sustained

in an accident that occurred more than a year later, on January 6, 2019. Defendants seek medical records, bills, and data pertaining to the rate of reimbursements for the procedures billed to Taylor.

Plaintiffs filed motions to quash both sets of subpoenas pursuant to Rule 45, arguing they are overly broad, unduly burdensome, and seek information that is irrelevant to the claims and defenses in this case. (Dkt. Nos. 114 & 122.) We address each motion in turn below.

## II. Standard Under the Federal Rules

Generally speaking, discovery under Rule 26 is broad; parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26; *see also Allstate Ins. Co. v. Electrolux Home Prod., Inc.,* No. 16 CV 4161, 2017 WL 5478297, at *2 (N.D. Ill. Nov. 15, 2017) ("The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26.") (quotation omitted). Nevertheless, "[t]he importance of protecting parties and non-parties from undue burden is found in various provisions of the Federal Rules of Civil Procedure." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). For example, under Rule 26(c), courts may limit discovery to protect a party or non-party from, *inter alia*, undue burden or expense. Fed. R. Civ. P. 26(c)(1). Additionally, under Rule 45(d), the court *"must* quash or modify a subpoena" that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added); *see also Elliot v. Mission Trust Services, LLC,* No. 14 CV 9625, 2015 WL 1567901, 3 (N.D. Ill. 2015) ("The desideratum of Fed. R. Civ. P. 45[(d)] is the protection of non-parties from undue burdens.").

When determining whether a person will be subjected to undue burden, courts consider a number of factors, "including the person's status as a non-party, the relevance of the discovery

3

sought, the subpoenaing party's need for the discovery, and the breadth of the request." *Uppal*, 124 F. Supp. 3d at 813. "Concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs." *Id*. (emphasis in original). "Ultimately, the decision whether to quash or modify a subpoena is within the discretion of the district court." *Allstate*, 2017 WL 5478297, at *2 (citations omitted).

**III.    Analysis**

    **A.    Plaintiffs' Motion to Quash Subpoenas to Medical Providers from the November 2017 Accident (Dkt. 114) is Granted in Part.**

Plaintiffs have moved to quash the supplemental subpoenas to the treating medical providers following the 2017 accident because they are overly broad, unduly burdensome, and seek information irrelevant to the case.[1] Plaintiffs argue that information regarding the providers' general treatment and billing practices (*e.g*., number of injections, amounts billed to litigants vs. non-litigants, total amounts recovered in litigation, etc.) is irrelevant to the issues in this case. In plaintiffs' view, defendants will use this type of information to elicit improper inferences that the general business practices of these providers diminishes the validity of plaintiffs' claims. Defendants respond that the subpoena requests seek information relevant to rebut the reasonableness of plaintiffs' claimed expenses. According to defendants, they are entitled to discover information revealing the treatment frequencies, billing structure, and litigation recovery amounts of these facilities. For a number of reasons, the Court disagrees.

First, plaintiffs' motion to quash is granted to the extent the subpoenas relate to former plaintiff Shanika Taylor. The District Court recently dismissed Ms. Taylor for want of prosecution following her repeated failure to appear. (Dkt. 111.) As such, any information

---

[1] Counsel for Dr. Kalina appeared at the hearing and joined in plaintiffs' motion to quash.

related to amounts billed for services provided to Ms. Taylor is irrelevant – as defendants admitted at the February 4, 2020 hearing – and need not be produced.

Second, defendants' requests requiring the non-party subpoena respondents to "generate reports," or otherwise produce documents not already in their possession, create an undue burden and are improper. (*See e.g.,* Nos. 4-6, 8-9, & 11-12 in Rider A.) Although a subpoena under Rule 45 may require a non-party to produce "documents, electronically stored information, or tangible things in that person's possession, custody, or control," Fed. R. Civ. P. 45(a)(1)(A), Rule 45 "does not contemplate that a non-party will be forced to create documents that do not exist." *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 168 F.R.D. 630, 633 (N.D. Ill. 1996) (quashing subpoena that would require non-party to create documents to comply); *see also Crawford v. Biolife Plasma Servs. LP*, No. 10 CV 24, 2011 WL 2183874, at *4 (N.D. Ind. June 3, 2011) ("The power to subpoena documents from non-parties during discovery is limited to records that already exist and are within the nonparty's possession."); *In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder*, 2007 WL 1983780, at *15 (Fed. Cl. May 25, 2007) (collecting cases and noting that courts have often denied discovery requests – under Rule 34 and Rule 45 – in which a party or non-party would be required to "create" or "prepare" documents). Defendants have provided no legal authority to the contrary. Consequently, plaintiffs' motion to quash is granted to the extent defendants' subpoenas require the non-party medical providers to generate reports or otherwise create documents that do not exist.

Lastly, and most importantly, the breadth of information defendants seek regarding the general treatment and billing practices of these non-party medical providers is, for the most part, irrelevant to the claims at issue. To be clear, in this personal injury action, plaintiffs will be "entitled to recover as compensatory damages the reasonable expense of necessary medical care

resulting from defendants' negligence, if proved." *Arthur v. Catour*, 833 N.E.2d 847, 853 (Ill. 2005). Where, as here, the medical bills remain unpaid, plaintiffs "can establish reasonableness [of the expenses] by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services." *Id*. at 853-54. Of course, "defendants are free to cross-examine any witnesses that a plaintiff might call to establish reasonableness, and the defense is also free to call its own witnesses to testify that the billed amounts do not reflect the reasonable value of the services." *Wills v. Foster*, 892 N.E.2d 1018, 1033 (Ill. 2008); *see also Arthur*, 833 N.E.2d at 854. ("The defendant may rebut the *prima facie* reasonableness of a medical expense by presenting proper evidence casting suspicion upon the transaction.").

Here, defendants apparently seek to rebut the reasonableness of the charges for the plaintiffs in this case by showing that these medical providers seek reimbursement solely from personal injury litigation and drive up the prices for billed services to maximize recovery. To do so, defendants issued the instant subpoenas for broad billing information related to the total amounts the providers recover in all litigation matters and any discrepancy between the treatment and charges billed to all litigating patients and all non-litigating patients. As an initial matter, defendants do not dispute that these broad requests will impose a significant burden on the medical providers. As explained above, the burden thrust upon these non-party medical providers by defendants' broad requests is entitled to special weight. *Uppal*, 124 F. Supp. 3d at 813. This in itself is a reason to deny defendants' requests.

Even setting aside the issue of burdensomeness, the Court does not agree with defendants' assertion that this information will be relevant. Defendants cite to a line of cases outside of Illinois for the general proposition that "the price charged for the same services to

other patients within the same hospital is also relevant to the question of reasonableness." *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1271 (S.D. Fla. 2006); *see also Parkview Hosp., Inc. v. Frost ex rel. Riggs,* 52 N.E.3d 804, 810 (Ind. Ct. App. 2016) (holding uninsured patient was entitled to discover information about discounted amounts the hospital accepted from patients who had private insurance or were covered by government programs). But, as plaintiffs point out, the cases relied upon by defendants are distinguishable.

For example, unlike here, in almost all of the cases cited by defendants, the medical providers at issue were parties to the action and directly involved in litigating the reasonableness of the medical expenses. *See Parkview Hosp.*, 52 N.E.3d 804 (injured patient filed suit against hospital to contest the reasonableness of the hospital's lien under the state lien act); *In re N. Cypress Med. Ctr. Operating Co., Ltd.,* 559 S.W.3d 128, 134 (Tex. 2018), *reh'g denied* (Nov. 16, 2018) (same).

Additionally, none of the cases relied on by defendants support their requests for information related to the providers' "reimbursement" totals (*i.e.*, ultimate recovery) from litigation related matters. Instead, those cases permit the discovery of, *inter alia*, the varying billed rates and reimbursement rates between different classifications of patients, *i.e.,* uninsured, privately insured, or government insured. *See e.g.*, *Bowden v. The Med. Ctr., Inc.*, 773 S.E.2d 692, 693 (Ga. 2015) ("[H]ow much the hospital charged other patients, insured or uninsured, for the same type of care during the same time period is relevant for discovery purposes."). Defendants' attempt to analogize a medical provider's ultimate recovery from personal injury litigation to varying billing and reimbursement rates for services in the same facility is misplaced. This is particularly so here because, in some instances, Illinois courts have declared that "[r]eimbursement rates are not relevant to show whether a medical charge is reasonable."

7

*Verci v. High*, --- N.E.3d ---- 2019 IL App (3d) 190106-B, ¶ 32, 2019 WL 7707887, at *6 (Dec. 18, 2019).

The Court does agree, however, that defendants are entitled to the "fee schedule and any data relied upon" by each provider to determine the amount billed for the services provided to the plaintiffs. (*See* Rider – No. 13.) Further, to the extent that any of the medical providers maintain different fee schedules for patients that are not involved in litigation, those must be produced.[2] This information may prove relevant to rebut the reasonableness of plaintiffs' medical expenses. *Wills*, 892 N.E.2d at 1033.

For these reasons, defendants' motion to quash (Dkt 114) is granted in part and denied in part. The subpoena respondents need only produce documents (that already exist) responsive to No. 13 of Rider A. The respondents must also produce varying fee schedules, if any, for patients that are not involved in personal injury litigation.

### B. Plaintiffs' Motion to Quash Subpoenas to Medical Providers from the January 2019 Accident (Dkt. 122) is Granted in Part.

Plaintiff Andre Taylor also filed a motion to quash the subpoenas defendants recently issued to the medical providers that treated him following a January 2019 car accident. At the hearing, plaintiffs' counsel confirmed that Mr. Taylor was not seeking to recover damages for any such treatment in this action, but agreed that, at a minimum, the medical records may be relevant to this action. Defendants then conceded on the record to seek only the medical records from these providers. As such, plaintiff Taylor's motion to quash is granted in part. Pro Clinics, EQMD, Inc., Elite Rehabilitation Institute, Chicago Bone & Joint Institute, Preferred Open MRI, and Provident Hospital of Cook County need only produce Mr. Taylor's medical records arising

---

[2] Notably, the billing administrators for Windy City Anesthesia and Sage Medical Management already testified that they do not maintain different fee schedules for non-litigating patients. (*See* Defs.' Resp. Ex. D at 19:14-18 and Ex. F at 54:17-24.)

from the January 2019 accident and defendants' requests for any other data and documents are denied.

## Conclusion

For the foregoing reasons, plaintiffs' pending motions to quash are granted in part and denied in part. Defense counsel shall promptly provide each subpoena respondent with a copy of this order. The subpoena respondents shall provide the documents and information ordered above by February 26, 2020.

**ENTERED:**

_____
**Jeffrey I. Cummings
United States Magistrate Judge**

**Dated:** February 7, 2020