IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE TAYLOR, ELRESE BOOKER, and KATRINA J. STONE, ) ) ) ) Plaintiffs, ) ) v. ) ) LEONARD M. KILMER, individually and as ) agent of WILSON LINES, INC., and WILSON ) LINES, INC. ) ) Defendants. ) | Case No. 18 C 7403<br><br>Hon. Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Andre Taylor, Elrese Booker, and Katrina J. Stone, now move for summary judgment against Defendants, Leonard M. Kilmer and Wilson Lines, Inc., as to one of Defendants' affirmative defenses. For the reasons that follow, the Court grants Plaintiffs' motion.

## BACKGROUND

This suit arises from a November 2017 traffic collision that happened on an entrance ramp to Interstate 290 in the City of Chicago. (Pl.'s LR 56.1 SOF., Ex. 2 at ¶ 1, ECF No. 141.) Defendant Leonard Kilmer was driving a semi-tractor-trailer for his employer, Defendant Wilson Lines, Inc. As Kilmer drove down the ramp towards I-290, he rear-ended a vehicle carrying Plaintiffs Andre Taylor, Elrese Booker, and Katrina Stone. (*Id.* at ¶¶ 1-2.)[1]

In October 2018, Taylor filed suit against Defendants in Illinois state court, and in November 2018, Defendants removed the suit to this Court. (*See generally* ECF No. 1.) The Court

---

[1] The Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1367(a). (*See* Not. of Removal at ¶¶ 2-7, ECF No. 1; *see also* Mot. to Amend Compl. at 3-5, ECF No. 62); *see Dancel v. Groupon, Inc.*, 940 F.3d 381, 384-85 (7th Cir. 2019) (existence of subject matter jurisdiction can be gleaned from record as a whole).

1

later granted an unopposed motion to file a first amended complaint, which added Plaintiffs Booker and Stone. (*See* ECF No. 62; *see also* ECF No. 64.) Plaintiffs' First Amended Complaint alleges Defendants were negligent in rear-ending Plaintiffs' vehicle, and Plaintiffs seek damages for personal injuries they allegedly suffered in the accident. (*See generally* Am. Compl., ECF No. 70; *see also* ECF No. 141 at ¶ 16.)[2]

Thereafter, Defendants filed their answer, which contained two affirmative defenses. (*See* Defs.' Answer, ECF No. 73.) The second affirmative defense is titled "fraud in the presentation of evidence as to all plaintiffs" and alleges, in its entirety:

> Defendants contend Plaintiff's cause of action is barred by fraud due to fraudulent actions pre-accident being the sole proximate cause of the accident and/or claimed damage or the extent of it being misrepresented. Defendants' investigation and discovery into this matter is incomplete at this early stage.

(*Id*. at 36.) After the close of discovery, Plaintiffs moved for summary judgment on Defendants' second affirmative defense, arguing there are no genuine disputes of material fact in the record and that Defendants' affirmative defense fails as a matter of law because Defendants fail to offer evidence sufficient to prove fraud. (*See generally* Pl.'s Memo. in Support of Summary Judgment, Ex. 1, ECF No. 141.) Defendants oppose Plaintiffs' motion.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.

---

[2] Plaintiffs' First Amended Complaint added a fourth plaintiff, Shanika N. Taylor, who was later dismissed as a party for want of prosecution. (*See* ECF No. 111.)

2d 202 (1986). At the summary judgment stage, a court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014). Rather, a court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "A party that does not bear the burden of persuasion [at trial] may move for summary judgment by showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (quotations omitted). If the moving party makes such a showing, "the nonmoving party bears the burden of production under Rule 56 to designate specific facts showing that there is a genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## **DISCUSSION**

Plaintiffs move for summary judgment on Defendants' second affirmative defense. Again, the affirmative defense states that "Plaintiff's cause of action is barred by fraud due to fraudulent actions pre-accident being the sole proximate cause of the accident and/or claimed damage or the extent of it being misrepresented." (ECF No. 73 at 76.) Plaintiffs argue there is not sufficient evidence in the record that would permit a reasonable trier of fact to find for Defendants on this affirmative defense. For the reasons that follow, the Court agrees with Plaintiffs.

In this diversity suit, Illinois law governs plaintiffs' claims and any affirmative defenses. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S. Ct. 817, 822-23 (1938); *see also Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) ("In a diversity case, the legal and factual sufficiency of an affirmative defense is examined with reference to state law."); *RBS Citizens, N.A. v. Sanyou Imp., Inc.*, 525 F. App'x 495, 497-98 (7th Cir. 2013) (applying state law

3

and affirming summary judgment on defendants' affirmative defense). Under Illinois law, Defendants bear the burden of proving their affirmative defense of fraud. *See e.g., Cordeck Sales, Inc. v. Constr. Sys.*, 382 Ill. App. 3d 334, 384-85, 320 Ill. Dec. 330, 378, 887 N.E.2d 474, 522 (Ill. App. Ct. 2008) (noting "the well-established legal principle that it is the party raising an affirmative defense that bears the burden of proof" and granting summary judgment on affirmative defense of fraud); *see also Andrews v. Metro. Water Reclamation Dis. of Greater Chicago*, 2019 IL 124283, ¶ 23, --- Ill. Dec. ----, --- N.E.3d ---- (Ill. 2019) (reviewing grant of summary judgment and noting defendant bears the burden of proving affirmative defense).

The parties agree that, to prevail on their defense, Defendants must show by clear and convincing evidence that: (1) the plaintiffs made a false statement of material fact; (2) the plaintiffs knew the representation was false; (3) the plaintiffs intended that the representation induce the defendants to act; (4) the defendants relied upon the truth of the statement; and (5) defendants' damages resulting from the reliance." *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 221 Ill. Dec. 389, 396, 675 N.E.2d 584, 591 (Ill. 1996); *see also Wernikoff v. Health Care Serv. Corp.*, 376 Ill. App. 3d 28, 235, 315 Ill. Dec. 524, 530, 877 N.E.2d 11, 17 (Ill. App. Ct. 2007) (affirming summary judgment); *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 864-65 (7th Cir. 2013) (applying Illinois law and affirming summary judgment on fraud-based defense). Defendants further argue that their fraud defense can also be based on Plaintiffs' *concealment* of a material fact. (Defs.' Resp. at 2, ECF No. 145.) This is true, but under a theory of fraudulent concealment, the elements differ slightly and Defendants' burden of proof is greater. For instance, Defendants must show a special relationship existed between the parties giving rise to a duty to speak. *See Connick*, 174 Ill. 2d at 500; *see also Schrager v. N. Cmty. Bank*, 328 Ill.

4

App. 3d 696, 706-07, 767 N.E.2d 376, 384 (Ill. App. Ct. 2002) (analyzing elements of common law fraudulent concealment).

In their motion, Plaintiffs show a lack of evidence in the record to support these elements and argue that, as a result, Defendants' second affirmative defense fails as a matter of law. (*See* ECF No. 141 at 3-5; *see also id.*, Ex. 2 at ¶¶ 1-2, 5-16.) Accordingly, the burden shifts to Defendants to point to evidence in the record that creates a genuine issue of material fact. *Modrowski*, 712 F.3d at 1167. Defendants appear to offer three theories for which they argue there is sufficient evidence to support their defense of fraud.

Before addressing these theories, the Court must address Defendants' failures to comply with Local Rule 56.1 and the attendant consequences. In relevant part, LR 56.1 requires a party opposing summary judgment to file "a concise response to the movant's statement that shall contain," among other things, "numbered paragraphs, each . . . stating a concise summary of the paragraph to which it is directed" and a response to each numbered paragraph "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" LR 56.1(b)(3). First, Defendants fail to summarize (or restate) the paragraph to which they are responding. While this violation of LR 56.1 is mainly a matter of inconvenience, Defendants' improper denials are more seriously problematic. When Defendants deny the facts offered by Plaintiffs, they do so with bare denials or legal argument and fail to offer opposing facts supported by citations to the record. (*See* Defs.' LR 56.1 Resp., Ex. 1 at ¶¶ 6-16, ECF No. 145.) This is insufficient to contest Plaintiff's proffered facts. Defendants cannot create disputes of fact by relying upon legal arguments, conclusions, or suppositions because these are not facts. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-CV-2902, 2013 WL 80367,

5

at *2 (N.D. Ill. Jan. 7, 2013) (noting "courts are not required to wade through improper denials and legal argument in search of a genuinely disputed fact") (quoting *Bordelon v. Chi. Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Accordingly, the Court disregards Defendants' improper denials and deems admitted the underlying facts proffered and properly supported by Plaintiffs. *See Ibrahim v. Univ. of Chi.*, No. 17 C 6213, 2020 WL 405635, at *1 (N.D. Ill. Jan. 24, 2020) (disregarding unsupported and argumentative responses and deeming underlying facts admitted).

The Court also notes Defendants flagrantly disregard LR 56.1's requirements when it comes to their own statement of additional facts. Defendants offer 79 additional facts, many of which are clearly immaterial to deciding the instant motion. (ECF No. 145, Ex. 1 at ¶¶ 17-96.) By rule, Defendants are limited to 40 additional facts, unless they first obtain leave of Court, which they did not. LR 56.1(b)(3)(C). These violations undermine LR 56.1's important purpose, which is to aid a district court in isolating legitimately disputed facts and determining whether summary judgment is appropriate. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). It is well-settled that district courts have the discretion to require strict compliance with LR 56.1, and the Court could choose to simply disregard the supplemental facts that violate LR 56.1. *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015). However, to the extent Defendants have offered well-supported additional facts, the Court has chosen to consider them.

Turning to the parties' arguments, the Court discerns three theories of fraud from the briefing. The premise of the first theory appears to be that there was a white sedan involved in the collision and that Plaintiffs and the driver of the white sedan conspired to purposefully cause the collision. Although Plaintiffs spend time in their motion attacking the evidence supporting this theory, (*see* ECF No. 141 at 3-5; *see also id.*, Ex. 2 at ¶ 10), the Court need not delve too deeply

6

into the issue because Defendants appear to abandon this theory in their response. (*See generally* ECF No. 145 at 4 (mentioning white sedan but making no argument of conspiracy or agreement between driver and plaintiffs to cause collision); *see also id.*, Ex. 1 at ¶ 10 (denying defense is based on conspiracy theory).) To the extent Defendants do base their defense on this theory (and assuming the theory can support a defense of fraud), Defendants' failure to develop their argument or offer evidentiary support amounts to waiver. *See Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 430 (7th Cir. 2020) ("A district court is entitled to expect a party . . . opposing summary judgment to lay out her arguments and the supporting, admissible evidence in sufficient detail that the court is not forced to construct the arguments itself.") Further, to the extent Defendants did choose not to pursue this theory in their response, they were correct to do so because there is not sufficient evidence in the record suggesting, "let alone clearly and convincingly" showing, that Plaintiffs and the driver of the white sedan were working together to cause the collision. *Asia Pulp & Paper Co.*, 707 F.3d at 865.[3]

The second theory of fraud also fails. In essence, Defendants argue the following: Plaintiffs say there was traffic on the on-ramp that caused them to stop moments before Defendant Kilmer struck their vehicle, but other evidence shows there was no traffic on the on-ramp at the time of the collision. Defendants argue this other evidence shows that, or at least creates a dispute of fact whether, Plaintiffs provided false testimony about the traffic on the on-ramp. Defendants contend this false testimony can provide the basis for their fraud defense. (ECF No. 145 at 5-6.)

---

[3] Along with testimony that the white sedan stopped on the ramp and prompted Plaintiffs' vehicle to stop, the only evidence related to this theory is Defendant Kilmer's deposition testimony, raised by Plaintiffs, that "the only thing that would make me believe that they [Plaintiffs and the white sedan] were working together was that the guy chased off after the white car and never came back." (ECF No. 141, Ex. 2 at ¶ 12.) The parties fail to explain exactly what Kilmer meant by this, but even viewed in a light most favorable to Defendants, no reasonable fact finder could infer the existence of a conspiracy based on this evidence.

Defendants are wrong. Simply put, Defendants conflate lying with fraud. Even assuming Plaintiffs are lying about the traffic on the on-ramp at the time of the collision, this misrepresentation cannot form the basis of a fraud defense because Defendants fail to offer any evidence to prove the other elements of fraud. For example, there is no evidence showing that Defendants reasonably relied on Plaintiffs' false testimony or that the testimony induced Defendants to take any particular action that caused them damages. *Asia Pulp & Paper Co.*, 707 F.3d at 864-65. Indeed, quite the opposite is true. Defendants are fighting liability in this suit and are challenging the truthfulness of Plaintiffs' testimony (which, of course, they are free to do at trial). Tellingly, in their response, Defendants make no argument, nor point to any evidence, showing how they can prove all elements of fraud based on this theory. (ECF No. 145 at 5-6.) Defendants appear to think catching Plaintiffs in a lie is enough to prove a defense of fraud. It is not. *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017).

Finally, Defendants argue they have a viable fraud defense based on a theory that Plaintiff Katrina Stone obtained a rental car from Defendants through fraudulent means. Although the record is far from clear, the parties seem to agree that, soon after the collision, an agent of Defendant Wilson Lines, Inc. contacted Stone about providing her a rental vehicle due to the fact that her vehicle was damaged in the collision. (*See* ECF No. 141 at 4; *see also* ECF No. 145 at 3-4.) At some point, some man—identified only in Defendants' response brief as Defendant's "investigator"—came to take photographs of the damage to Stone's vehicle. (*See* ECF No. 145 at 3; *see also id.*, Ex. 1 at ¶ 38 (providing no citation to record).) The investigator did not speak to Stone or ask her any questions about the damage caused by the collision. Defendant eventually provided Stone with a rental vehicle sometime in 2017 for an unspecified amount of time. (*See* ECF No. 145 at 5.) However, after the collision giving rise to this suit, Stone's vehicle was

8

apparently involved in another collision that caused further damage, and Stone allegedly failed to disclose this fact to Defendant's agent or the man who took photographs of her vehicle prior to obtaining the rental vehicle. (*Id.* at 3-4.) Defendants argue Stone's concealment of this fact amounts to fraud. (*Id.* at 5-6.)

In response, Plaintiffs point out they are not seeking to recover damages relating to Stone's vehicle or any property damage for that matter, so Defendants' rental car theory is ultimately irrelevant. The Court doubts whether this theory of fraud amounts to an affirmative defense because it would not avoid liability on Plaintiffs' negligence claims; rather, it sounds like a counterclaim. *See Solis v. Wallis*, No. 11 C 3019, 2013 WL 12447274, at *4 (N.D. Ill. Sept. 13, 2013). But this pleading defect does not ultimately doom Defendants. *See id.*; *see also* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates . . . a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . . ."). Nor does the pleading defect ultimately matter because, once again, Defendants fail to point to any evidence in the record that could support many of the required elements of the alleged fraud.

As described above, Defendants' theory is premised not on an affirmative misrepresentation but on Stone's concealment of a material fact, i.e., that certain damage to her vehicle was caused by a subsequent accident. So Defendants' theory is actually one of fraudulent concealment, and again, under Illinois law, more is required of Defendants to prove fraudulent concealment. Defendants must show:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak . . .; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury . . . . [Defendants] must further demonstrate justifiable

> reliance, as well as the existence of a special or fiduciary relationship giving rise to a duty to convey accurate information.

*Schrager*, 767 N.E.2d at 384 (quotations and citations omitted). At the very least, Defendants fail to point to any evidence in the record showing that they relied on a mistaken belief about the vehicle damage in providing Stone a rental vehicle. Indeed, the only evidence in the record on this issue is Stone's testimony that she talked to someone on the phone about a rental car and that she saw a man taking photographs of her damaged car. That is it. There is no evidence regarding the content of the phone conversation between Stone and Defendant's agent. There is no evidence showing what Defendant knew before providing the rental car or how Defendant made the decision to provide a rental vehicle to Stone. This absence of evidence is enough, on its own, to warrant summary judgment here. Even further though, Defendants do not show that they actually paid for a rental vehicle or provided it to Stone (i.e., that Defendants were actually injured). Further still, Defendants point to no evidence relating to the existence of a "special or fiduciary relationship" between Defendants and Stone; Defendants also fail to address the "reasonable inquiry" element. The latter failure is surprising, given that Defendants admit that Defendant Kilmer took photographs of Stone's vehicle just after the collision (and therefore, Defendants presumably had the information needed to discover the truth about this issue). (*See* ECF No. 145 at 3.)

Defendants oppose summary judgment by explaining they will provide a representative at trial who "will testify" on at least some of these issues. (*Id.* at 5-6.) This is insufficient. As Plaintiffs point out, "[s]ummary judgment is the proverbial 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Defendants contend they learned about the subsequent collision involving Stone's vehicle for the first time at her deposition, in December 2019. (ECF No. 145 at 5.) So Defendants had ample time before fact

10

discovery closed to develop support for this theory. As Plaintiffs point out in their reply, Defendants did not do so. (*See* Reply, ECF No. 148 at 5, 9.) Defendants cannot escape summary judgment now by speculating about testimony that may come out at trial.

Finally, in one sentence at the end of their response, Defendants ask the Court, in the alternative, to permit them to amend their second affirmative defense to better allege the second and third theories of fraud discussed above. (ECF No. 145 at 6; *see also id.*, Exs. E and F (amended versions of second affirmative defense).) "In considering a request to amend pleadings, the district court has the discretion to deny the request if there is undue delay, bad faith, or dilatory motive, or undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Malone v. Am. Friends Ser. Comm.*, 213 F. App'x 490, 495 (7th Cir. 2007). Even if the Court granted leave to amend, summary judgment would still be appropriate for the reasons discussed above, so in other words, Defendants' proposed amendments are futile. *Sound of Music Co. v. 3M*, 477 F.3d 910, 923 (7th Cir. 2007) (affirming denial of leave to amend based on futility where amended pleading would not survive a motion for summary judgment). Moreover, even if by some chance Defendants have evidence to support their amended fraud allegations, they have not described such evidence. To permit Defendants the chance to revisit the pleadings now, after the close of fact discovery and summary judgment briefing, would unduly delay the resolution of this case, especially where Defendants have no showing of good cause as to why they could not have made their proposed amendments earlier. Accordingly, Defendants' request to amend is denied. *See Ferguson v. Roberts*, 11 F.3d 696, 706-07 (7th Cir. 1993). [4]

---

[4] The Court need not address the Defendants' opening argument that Plaintiffs' motion should be denied as an "ill-timed motion to strike." (ECF No. 145 at 1-2.) Putting aside the fact that Defendants certainly fail to allege their fraud defense with the particularity Rule 9(b) requires, *see RBG Plastic, LLC v. Webstaurant Store*, No. 1:18-cv-5192, 2020 WL 7027601, at *4-6 (N.D. Ill. Nov. 30, 2020) (analyzing applicable standard), Plaintiffs attack the sufficiency of the evidence supporting Defendants' fraud defense. It is on this basis that summary judgment is appropriate.

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment [141] on the second affirmative defense. The Court sets a status hearing for January 29, 2021.

**SO ORDERED.**                    **ENTERED: January 8, 2021**

_____
**HON. JORGE ALONSO**
**United States District Judge**